## HENSON v. COMMISSIONERS' COURT OF HENDERSON COUNTY.
### No. 11353.

Court of Civil Appeals of Texas. Dallas. Dec. 3, 1932.

Rehearing Denied Jan. 7, 1933.

Ashworth, Crisp & Ashworth, of Kaufman, for appellant.

E. A. Landman and H. B. Green, both of Athens, for appellee.

LOONEY, J.

During 1919, road district No. 13 of Henderson county was created, and bonds amounting to $75,000 payable in thirty installments bearing 5½ per cent. annual interest were authorized; the bonds were regularly issued, sold, and the proceeds used to build and operate public roads in said district. On September 14, 1931, the commissioners' court of Henderson county levied an ad valorem tax of $2 on each $100 valuation of taxable property in the district for the redemption of the matured and immediately maturing bonds and interest thereon. George Henson, appellant, a resident property owner and taxpayer in said district, for himself and on behalf of all others similarly situated, sued the commissioners' court of Henderson county, its tax assessor and collector, to enjoin the collection of the tax levy above mentioned.

The road district was organized under the provisions of the statute of this state, held void by the Supreme Court of the United States (in Brown v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330), because repugnant to the due process clause of the Federal Constitution (Amendment 14). Thereafter the Legislature, at a special session convened in 1926, passed curative acts, that is, as applied to the road district in question, a special statute, being chapter 319, Special Laws of the First Called Session of the Thirty-Ninth Legislature, and, as applied to all road districts of the state similarly organized, a general statute, being chapter 17, General Laws of said Special Session.

The effect of the validating statutes was to legalize all such road districts, including road district No. 13, Henderson county; established their boundaries as selected by the petitioners and defined by the commissioners' court; validated all bonds issued and all proceedings of commissioners' courts pertaining to the creation of road districts as bodies corporate; also validated the construction of public roads therein, and all levies of taxes made for the redemption of bonds issued.

In the case of Louisiana Ry. & Nav. Co. v. State (Tex. Civ. App.) 298 S. W. 462, affirmed by the Supreme Court, 7 S.W.(2d) 71, similar to the case at bar, we held that, although the road districts involved were organized under the void statute, they were nevertheless validated by the act of the Legislature. We discussed at length every phase of the subject, with full citation of authorities, and can add nothing to what was there said.

Appellant contends, however, that the validating acts are repugnant to section 53, art. 3, of our Constitution, reading: "The legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into, and performed in whole or in part; nor pay, nor authorize the payment of, any claim created against any county or municipality of the state, under any agreement or contract, made without authority of law."

This section, in our opinion, has no application to the subject under consideration, because of the effect that must be given the validating acts; therefore, without further discussion, we overrule appellant's contention in this respect.

Appellant contends further that the levy in question is wrong in principle, amounts to double taxation, is confiscatory, and does "violence to the fundamental law of the land."

This contention is based upon the following situation: Taxes were regularly levied and collected from appellant and other tax-

payers in the district, approximately sufficient to discharge the principal and interest of bonds that matured in 1931; the amount collected being $7,494.30, of this the collector paid the county treasurer to the credit of the road district $5,556.16, and the same was by the treasurer placed in the Athens National Bank, the county depository; also the sum of $1,938.15 collected, but neither reported nor turned over to the treasurer, was by the collector deposited to the credit of his account in the said depository; and in this status the bank ceased payment, closed doors, and its affairs were placed in liquidation.

After the bank closed, these funds not being available for payment on the bonded indebtedness of the district, the commissioners' court, in the exercise, as we believe, of a sound discretion, made the levy in question.

The record fails to disclose what, if any, dividend had been paid depositors from the liquidation of the closed bank, or what, if any, effort was made, or contemplated, to realize on the bond of the county depository.

Appellant does not contend that the $2 levy is in excess of the constitutional limit, but that the payment by him and others of said taxes discharged the bond obligations (pro tanto), "and that if perchance the money is lost by the tax collector or the county treasurer or the county depository, that the taxpayer is not liable therefor, and that the remedy of the bondholder is against either or all of the above named officers and their bondsmen."

Was the commissioners' court, in the situation above described, authorized to make the levy of September 14, 1931, or rather designate the rate, the levy having been made before the bonds were sold? (On the nature of the levy, see discussion in Louisiana, etc., Co. v. State (Tex. Civ. App.) 298 S. W. 462, 468.) We think so. The tax money collected was handled by the county officials as the law directs (see articles 738, 740, 741 and 742, R. S. 1925). While it would be a hardship at any time, and especially is it, under stress of present conditions, for appellant and the other taxpayers to be called upon to replace the fund tied up on account of the bank failure, yet they are not without relief; the district is a body corporate (article 746), may sue and be sued; dividends may be realized from the affairs of the depository bank; if necessary, the liability of its bondsmen may be enforced, and any sums collected, from either or both sources, will, to that extent, lessen tax levies in the future, but we do not think a suit to enjoin officials from collecting the tax in question a proper remedy. The obligation of the district was not discharged, because of the misfortune, its misfortune, and it alone must suffer the consequences. The duty of the commissioners' court to see that sufficient taxes, within the constitutional limit, were collected to satisfy the bonded indebtedness, is plain (see articles 738 and 740), and we find in the instant case no evidence of the abuse of discretion.

The assignments and propositions urged for reversal having been duly considered, and found without merit, are overruled, and the judgment below is affirmed.

Affirmed.